UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

RICHARD SPROLES )
)
V. ) NO. 2:08-CV-204
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation, regarding the judicial appeal of the final decision of the defendant Commissioner denying the plaintiff's applcation for supplemental security income under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 11 and 15].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff is a "younger individual." He has no past relevant work experience. He has a limited education. Plaintiff alleges disability due to musculoskeletal impairments and various mental impairments, including depression and anxiety.

The plaintiff's medical history is set forth in the plaintiff's brief in support of his dispositive motion as follows:

> Plaintiff was admitted to Holston Valley Medical Center from February 20, 2000 through February 23, 2000, after he presented with an 18-hour history of abdominal, pain, chest pain, nausea, and vomiting. The final diagnoses were alcoholic gastritis, hypertension, alcohol abuse, history of seizure disorder, and hyponatremia (Tr. 214-221).
>
> Plaintiff received treatment at ETSU Family Physicians from March 27, 2000 through November 15, 2004. Conditions and complaints addressed include fatigue, chronic abdominal pain, alcohol cessation, lethargy, nervousness, anxiety, pancreatitis, hypertension, chronic musculoskeletal pain, gastroesophageal reflux disease (GERD), cholethiasis, abscessed tooth, upper respiratory infection, depression, insomnia, weight loss, chronic congestion and cough, tobacco abuse, seizure disorder, chronic back pain, right knee pain, headaches, claustrophobia, chronic diarrhea, dyspnea, memory impairment, situational stress, chronic obstructive pulmonary disease (COPD), and irritability (Tr. 222-290).
> Plaintiff underwent laparoscopic cholecystectomy on January 3, 2001, due to chronic cholecystitis (Tr. 291-292).
> Plaintiff underwent consultative exam by Dr. Karl W. Konrad on April 10, 2003. Presenting complaints included shortness of breath, decreased hearing, and seizures. In summary, Dr. Konrad noted Plaintiff complains of recent onset of breathing problems; he says he hurt his right ear in a fall and now has decreased hearing; he says he used to have seizures but now only has twitches; and he is treated for hypertension. The diagnoses were hepatomegaly, spider angiomas, right upper quadrant tenderness, and right ear cerumen impaction. Dr. Konrad opined Plaintiff had no impairment related physical limitations (Tr. 297-303).
> On April 21, 2003, Plaintiff underwent consultative exam by Elizabeth A. Jones, M.A. Plaintiff reported anxiety, not getting along with people, staying nervous, difficulty remembering things, difficulty concentrating, depression, sleep difficulties, varying

2

appetite, bad dreams, and a history of suicide attempts. WAIS-III testing yielded a Verbal IQ score of 77, a performance IQ score of 77, and a Full Scale IQ score of 75. WRAT-3 testing revealed a grade score of high school in reading, a grade score of fourth in spelling, and a grade score of fourth in arithmetic. The diagnoses were anxiety disorder NOS; alcohol dependence, sustained full remission (by self report); personality disorder NOS with antisocial features; and borderline intellectual functioning. Ms. Jones opined Plaintiff should be able to understand and remember simple instructions and may have difficulty responding appropriately to criticism from supervisors due to characterological deficits (Tr. 304-309).

On May 2, 2003, a reviewing state agency psychologist opined Plaintiff was markedly limited in his ability to interact appropriately with the general public and moderately limited in his ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to set realistic goals or make plans independently of others (Tr. 310-325).

On May 6, 2003, a reviewing state agency physician opined Plaintiff should avoid all exposure to hazards (machinery, heights, etc.) and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 326-331).

On November 12, 2003, a reviewing state agency physician opined Plaintiff's acute back strain was severe, but would improve to non-severe within 12 months (Tr. 332).

Plaintiff underwent consultative psychological evaluation by Dr. Steven Lawhon on July 19, 2004. Plaintiff's grooming and hygiene were fair; his affect and mood was anxious and depressed; he did not complete serial sevens; he did not spell the word "world" correctly backwards; and he appeared to be cooperative with the evaluation. Plaintiff reported that he has a bad knee, bad, back, anxiety, and real bad nerves. The diagnoses were depression and anxiety due to medical reasons and alcohol dependence (in remission), with a current global assessment of functioning [hereinafter "GAF"] of 60. Dr. Lawhon opined Plaintiff's ability to understand and remember was not significantly limited; his ability to sustain concentration and persistence was mildly limited; his social interaction was not significantly limited; and his work adaptation was mildly limited (Tr. 333-336).

Plaintiff underwent his second consultative by Dr. Konrad on July 20, 2004. Presenting complaints included shortness of breath, back pain, right knee pain, right-sided weakness, poor hearing, and hypertension. Exam was remarkable for limited range of motion of the lumbar spine and hepatomegaly. Chest x-rays were noted to show partially calcified granulomas of the right hilum. The diagnoses were hepatomegaly, spider angiomas, rule out acute alcohol intoxication, and limited range of motion of lumbar spine with normal x-rays. Dr. Konrad opined Plaintiff had no impairment related physical limitations (Tr. 337-345A).

On August 10, 2004, a reviewing state agency source opined Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to respond appropriately to changes in the work setting (Tr. 346-362).

On August 1, 2004, a reviewing state agency physician opined Plaintiff could lift/carry a maximum of 100 pounds or more occasionally, 50 pounds or more frequently; could sit for a total of six hours in an eight-hour workday; could frequently climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, extreme heat, vibration, and fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 363-370).

Plaintiff received physical therapy at Holston Valley Outpatient Center from November 4, 2004 through November 30, 2004, due to chronic low back pain. Noted problems include low back pain, decreased range of motion of the trunk, and decreased independence with activities of daily living (Tr. 371-375).

On February 17, 2005, a reviewing state agency physician opined Plaintiff could lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; could stand/walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could never climb ladder/rope/scaffolds; could frequently climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; should void all exposure to hazards (machinery, heights, etc.); and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 376-381).

Plaintiff continued treatment at ETSU Family Physicians from November 19, 2004 through December 12, 2005. Problems noted during this time include chronic diarrhea, urinary tract infection, anxiety, seizure disorder, polyuria, stress, fatigue, achiness, chronic back pain, headache, left arm pain, right hand neuropathy, alcoholism, neck pain and decreased range of motion secondary to cervical fracture, hypertension, heartburn, insomnia, tachycardia, and kidney pain (Tr. 382-412).

Plaintiff was admitted to Holston Valley Medical Center from March 20, 2005 through March 24, 2005, after he fell and had a non-displaced C6 fracture. Cervical spine x-rays showed slight decreased height involving the C6 vertebral body; chest x-rays showed hyperinflated lungs suggesting chronic obstructive pulmonary disease, mild degenerative changes of the thoracic spine, and pulmonary emphysema with mild biapical pleural and parenchymal fibrosis; CT scan of the head showed mild generalized cortical cerebral atrophy and mild left frontal and bilateral ethmoidal chronic sinusitis; and CT scan of the cervical spine showed acute non-displaced fracture of the right C6 superior facet, as well as moderate cervical spondylosis at C6-7. MRI of the cervical spine revealed right facet fracture C6, with a disc bulge at this level and abnormal signal in the ligaments both within the anterior and posterior columns and facet joints, for which ligamentous instability could not be excluded; severe disc degeneration with a large posterior spur C5-6, with stenosis and mild ventral cord flattening; multifocal foraminal stenosis due to uncovertebral joint spurring; and prominent left C4-5 and to a less extent C3-4 facet joint degeneration. Post myelogram CT scan of the cervical spine yielded the impression of prominent posterior spur C6-7 with mild right anterior cord compression, as well as severe right with moderate left foraminal narrowing at this level due to uncovertebral joint spurring; right facet fracture C6; left foraminal narrowing C4-

5 due to facet osteoarthritis; and minor bulge C5-6. Plaintiff was sent home with no surgical intervention. The final diagnoses were C6 non-displaced fracture and alcohol intoxication (Tr. 461-472).

Dr. Ken W. Smith provided neurosurgery consultation on March 20, 2005, during Plaintiff's hospitalization. Plaintiff complained of posterior cervical pain; he was tender to palpation overlying the superior process of the lower cervical spine; and pronounced paraspinal muscle contractions were present. CT scan of the cervical spine was reviewed and noted to reveal evidence of a non-displaced fracture superior facet of C6, as well as spondylolytic changes at C5-6 and C6-7. MRI was recommended (Tr. 428-429). Plaintiff continued treatment by Dr. Smith from May 5, 2005 through August 1, 2005, during which time he was suffering persistent cervical pain and spasms, right shoulder discomfort, tingling sensation in the right upper extremity, cervical radiculopathy, and pain in the right biceps and all of the fingers and thumb of the right hand. Exams were remarkable for moderate cervical paraspinous muscle contraction bilaterally, decreased neck range of motion, hyperesthesia in the right thumb and the right ulnar nerve distribution, and tenderness of the lower cervical spine (Tr. 413-427, 430-440).

On May 5, 2005, Dr. Smith reviewed CT scan of Plaintiff's cervical spine dated May 2, 2005, noted to reveal a non-displaced facet fracture on the right at C6, as well as narrowing of the neural foramen on the right at C6-7 (Tr. 425-427). On May 19, 2005, Dr. Smith reviewed CT scan of Plaintiff's cervical spine dated May 16, 2005, which showed a non-displaced fracture of the right C6 facet and spondylitic changes at C6-7. Plain films revealed approximately 2 mm anterolisthesis of C5 on C6 and spondylosis at C6-7. The diagnoses were closed fracture of sixth cervical vertebra, without spinal cord injury; cervical radiculopathy, clinical stigmata of right C7, resolved; neck pain; and spasm of muscle, bilateral trapezius. Dr. Smith opined Plaintiff "cannot return to work at this time" (Tr. 422-424, 437-439). By August 1, 2005, Plaintiff continued to suffer cervical pain, as well as discomfort in the right shoulder and a tingling sensation extending into the right forearm and the dorsum of the right hand. The diagnoses were closed fracture of sixth cervical vertebra, without spinal cord injury; cervical radiculopathy, clinical stigmata of right C6; neck pain; and spasm of muscle, bilateral trapezius. Dr. Smith again opined Plaintiff "cannot return to work at this time." Plaintiff elected to proceed with ACDF with bank bone grafting and plating at C5-6, which was tentatively scheduled for August 3, 2005 (Tr. 414-418).

Plaintiff was seen by Holston Counseling Services for Crisis Response evaluation on January 14, 2005, after he became angry with his family, started tearing up his room, and threatened himself and police with a shotgun. Plaintiff was unkempt, his mood was depressed, and his affect was blunted; he reported some auditory hallucinations and short-term memory impairment; and his judgment, insight, and impulse control all appeared to be very poor. The diagnoses were depressive disorder NOS, rule out psychotic disorder, and rule out personality disorder, with a GAF of 22. Inpatient treatment was strongly recommended, thus Plaintiff was transported to Peninsula

5

Hospital (Tr. 458-460).[1]

Plaintiff continued treatment at Holston Counseling Services from January 26, 2005 through March 9, 2005, during which time he carried the diagnoses of depressive disorder and alcohol dependence, with a current GAF of 48, a highest last six months GAF of 55, and a lowest last six months GAF of 20. Problems noted during treatment include lack of insight, low behavioral controls, anger, depression, hostility, diminished ability to think, impaired judgment, past suicide attempts, homicidal ideation, aggression or rage, recklessness, self-injurious behavior, anxiety, worry, problems coping with daily living, alcoholism, insomnia, family relational problems, situational stressors, and sadness (Tr. 445-457).

Plaintiff has received Emergency Room treatment at Holston Valley Medical Center. On January 14, 2005, Plaintiff was brought in after being shot by police with a bean bag gun during an episode in which he was threatening to kill himself with a shotgun and was hitting his hands on the wall (Tr. 478-483). On May 2, 2005, Plaintiff suffered a fall. CT scan of the cervical spine showed non-displaced right C6 facet fracture and cervical spondylosis C6-7 with associated right foraminal stenosis and probable right C7 nerve root compression (Tr. 474-477).

Plaintiff was admitted to Indian Path Medical Center on November 14, 2007, after he presented with a several day history of generalized malaise and was found to be having hypovolemia and hyponatremia. The final diagnoses were hyponatremia, generalized weakness, hypertension, COPD, back pain, seizure disorder, and status post injury (Tr. 487-495).

Plaintiff continued treatment at ETSU Family Physicians from March 19, 2007 through March 9, 2009, during which time he was suffering GERD, abdominal pain, chronic pancreatitis, convulsive episode, alcoholism, back pain, depression, insomnia, anxiety, situational stress, nervousness, chronic gastritis, seizure disorder, decreased hearing, right knee pain, hypertension, urinary retention, hypokalemia, enlarged prostate, and chest pain (Tr. 525-570).

[Doc. 12, pgs. 2-9].

Two hearings occurred, and two decisions were rendered by the same ALJ because the tape used to record the first hearing was found much later to be blank.

At the second hearing, the ALJ took the testimony of the plaintiff and two "medical experts," Dr. Edward Griffin, a physician, and Dr. Thomas Schacht, a clinical psychologist. Since the plaintiff does not dispute the ALJ's finding regarding physical residual functional capacity, and has thus waived any argument regarding that issue, it is not necessary to

---

[1]Plaintiff, on that occasion, had a blood alcohol level of .270, over three times the legal level of intoxication necessary to support a charge of driving while intoxicated. [Tr. 458].

recount Dr. Griffin's testimony.

Dr. Schacht was asked "what sort of mental, emotional, or intellectual impairments do you feel this record reveals?" Dr. Schacht stated that the plaintiff's "primary impairment is alcohol related." He noted the plaintiffs continuing use of alcohol to great excess on a regular basis. He noted that "[t]here is in the primary care record complaints of anxiety for which he has been treated over the years, and most of the time there is no comment with respect to his response to treatment." He noted that plaintiff had frequently requested controlled substances be prescribed and that these requests were "routinely denied because of his alcoholism." [Tr. 595]

Dr. Schacht then elaborated on the plaintiff's complaints of anxiety. He stated that he was treated for it but that "there is nothing in the record that would let me identify any B criteria." In other words, the record of treatment for any anxiety was not detailed enough to draw any conclusions regarding the effect of the anxiety on plaintiff's ability to perform work-related tasks. [Tr. 596].

Cathy Sanders, a vocational expert, was also called at the hearing. Ms. Sanders was asked her to assume a person of plaintiff's age and educational background "who can lift 20 pounds occasionally and 10 pounds frequently, who should only occasionally work above shoulder level on his right side, and has no other environmental or additional limitations such as stooping, crouching, or crawling." When asked if there were jobs such a person could perform, Ms. Sanders identified jobs as a dishwasher, bagger, stock clerk, light cleaners, food preparation personnel, gluers, folders, labelers, hand packagers, sorters, laundry attendants, arcade attendants, and non-valet parking lot attendants. She stated there were 12,000 such

jobs in the region and 2.25 million in the national economy. [Tr. 599-600].

The ALJ, in his last hearing decision issued August 9, 2009, incorporated his earlier decision by reference. He found that the plaintiff had a severe musculoskeletal impairment and a severe mental impairment of alcohol abuse. He found that the claimant had only mild restrictions in activities of daily living, stating that Dr. Schacht "testified that the claimant's **only** mental impairment is alcoholism." [Tr. 508]. He also found the plaintiff had only a mild restriction in social functioning. He found the plaintiff had moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. With respect to the moderate difficulty in concentration, persistence or pace, he sated that "Dr. Schacht opined that the claimant's primary impairment is alcohol related." He also sated that "there are **complaints** of anxiety, which have been treated over the years." [Tr. 509]. All emphases are in the original.

Further on, the ALJ stated that "Dr. Schacht opined that the claimant's **primary** impairment was alcohol related." [Tr. 510]. He found that the plaintiff had no past relevant work. Based upon the testimony of Ms. Sanders, the ALJ found that there was a significant number of jobs which the plaintiff could perform. Accordingly, he found that the plaintiff was not disabled. [Tr. 511].

Plaintiff asserts that the ALJ erred in his evaluation of the plaintiff's mental impairments. He states that he would still be disabled even if he did not abuse alcohol. He states that the proper procedure for the ALJ to use would have been to do the five step evaluation without considering the plaintiff's alcoholism. If the ALJ found the plaintiff to have been not disabled, that would end the matter. However, if he found that the plaintiff

8

was disabled, the ALJ should then have determined if he would still be disabled if he stopped using alcohol. Plaintiff states that one cannot tell from the hearing decision whether the ALJ found the plaintiff's mental impairments were disabling notwithstanding his alcohol abuse. He points out that Dr. Schacht never offered an opinion as to plaintiff's work-related mental limitations. Finally, he asserts the ALJ did not properly consider the opinions of the non-examining State Agency psychologists.

The ALJ clearly and unequivocally found that the plaintiff had no severe mental impairment other than his alcohol abuse. He did not discuss the limitations caused by plaintiff's anxiety or depression because he did not find them to be severe limitations. Since 1996, a person cannot be considered disabled under the Social Security Act "if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. A. §§ 423(d)(2)(C) and 1382c(a)(3)(J). Granted, a plaintiff faces a difficult burden in proving the existence of an independent mental impairment when his physical and mental history is intertwined with chronic alcoholism. Nonetheless, that is the plaintiff's burden, and the severity of any mental impairment, apart from being an alcoholic, has not been shown.

On the other hand, there is considerable evidence that plaintiff does not have a severe mental impairment except for his addiction to alcohol. Dr. Lawhon found that the plaintiff had no more than mild limitations in any area of functioning [Doc. 336]. It is true that the shotgun waiving incident postdated Dr. Lawhon's examination of the plaintiff, but the plaintiff's blood alcohol level at that time was .270. Perhaps plaintiff does have a severe mental impairment buried under the barrier of alcoholism. But it is not apparent in this

9

record. The Court clearly understood the reasons for the ALJ's decision, and finds that there is substantial evidence to support them.

As for the failure of the ALJ to mention the more severe limitations opined by the non-examining State Agency psychologist, this error is harmless at best. As counsel for both sides in this dispute know, this Court places little stock in the opinions of non-examiners when they are juxtaposed against contrary opinions of examining doctors and psychologists. This is as true regardless of which party is helped or harmed.

There is substantial evidence to the support the finding of residual functional capacity and the questions posed to the vocational expert. The ALJ properly analyzed the record and considered the evidence. There are no errors of law requiring a reversal or remand. Therefore, it is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 11] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be GRANTED.[2]

Respectfully submitted:

 s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).